UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHERINE HENRY,

                          Plaintiff,

               -v-

TARGET CORPORATION and NESTLE
USA, INC.,

                          Defendants.

16-CV-8416 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Sherine Henry slipped and fell inside a Target store in August 2013. She sued

Target and one of its vendors, Nestle, for negligence. Defendants now move for summary

judgment. For the reasons that follow, that motion is granted in part and denied in part.

I.      Background

The following facts are taken from the parties' statements of undisputed facts and are not

subject to a genuine dispute unless otherwise noted.

Around 10:30 a.m. on August 10, 2013, Plaintiff Sherine Henry entered a Target store in

Mount Vernon, New York. (Dkt. No. 37 ("Defs SUF") ¶ 1.) She proceeded to aisle G64 of the

refrigerated section to pick up milk and iced tea. (Defs SUF ¶¶ 4, 5.) As Henry pushed her cart

past the ice cream area, her right foot slid and she fell to the floor. (Defs SUF ¶¶ 6, 9; Dkt. No.

45-14 ("Pls SUF") ¶ 6.)

Henry did not see what she slipped on, but as she stood up, she realized that her feet were

wet. (Defs SUF ¶¶ 7, 9; Pls SUF ¶¶ 7, 9.) She observed a line of water on the floor beginning in

aisle G64 and curving into a perpendicular aisle containing frozen vegetables. (Defs SUF ¶¶ 11,

12; Pls SUF ¶ 11.) Henry did not see anyone in either aisle, but she did notice a mobile rack

containing several unopened cardboard boxes in the frozen vegetable aisle. (Defs SUF ¶¶ 12–

14.)  Henry testified that she noticed water emanating from under the mobile rack.  (Defs SUF ¶ 15; Pls SUF ¶ 15.)

Henry then notified a Target employee of her accident, and she filled out a "Guest Incident Report" with manager Kenton Webley.  (Defs SUF ¶ 16; *see* Dkt. No. 37-4.)  Webley later completed a "LOD Investigation Report" about the accident.  (*See* Pls SUF ¶¶ 63−66; Dkt. No. 45-3.)  Plaintiff also spoke with another Target employee, Venita Richardson, who completed a "Team Member Witness Statement."  (Defs SUF ¶ 25; Pls SUF ¶ 25; *see* Dkt. No. 37-9.)  Richardson later testified that sometime prior to Henry's accident, she had seen a Haagen Dazs vendor in aisle G64 unpacking ice cream from a mobile rack.  (Defs SUF ¶ 29; Pls SUF ¶ 29; Dkt. No. 37-5 at 39:13–19.)

Henry filed suit in the Supreme Court of the State of New York against Target in October 2013, and she later added Nestle (the owner of Haagen Dazs) as a defendant in April 2016.  (*See* Dkt. No. 1-3.)  Defendants removed this action to federal court in October 2016 (*see* Dkt. No. 1),[1] and they now move for summary judgment (*see* Dkt. No. 35).[2]

## II.    Legal Standard

In a slip-and-fall case, the federal summary judgment standard differs from that of New York.  *See Decker v. Middletown Walmart Supercenter Store*, No. 15 Civ. 2886, 2017 WL 568761, at *4 (S.D.N.Y. Feb. 10, 2017).  Per the *Erie* doctrine, although "New York law

---

[1]     Subject matter jurisdiction is proper because Henry, a citizen of New York, is completely diverse from Defendants, which are citizens of California and Minnesota.  *See* 28 U.S.C. § 1332.

[2]     Henry submitted a brief of thirty-one pages without seeking or receiving permission to exceed this Court's twenty-five page limitation.  However, because the contents of pages twenty-six to thirty-one are immaterial to this Court's decision, the Court concludes that Defendants are not prejudiced by Plaintiff's noncompliance, and consequently, the Court declines to strike the brief.

supplies the elements of [Henry's] cause of action against Target, federal procedural law provides the standard for deciding whether Target is entitled to summary judgment on that cause of action." *Casierra v. Target Corp.*, No. 09 Civ. 1301, 2010 WL 2793778, at *1 (E.D.N.Y. July 12, 2010); *see generally Erie R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938); *Hanna v. Plumer*, 380 U.S. 460, 465 (1965).

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and an issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On a motion for summary judgment, the party bearing the burden of proof at trial must provide evidence on each element of her claim or defense. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "The moving party bears the initial burden of demonstrating 'the absence of a genuine issue of material fact,'" *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quoting *Celotex Corp.*, 477 U.S. at 323), which it may accomplish "by pointing to an absence of evidence to support an essential element of [Plaintiff's] claim," *Vasquez v. United States*, No. 14 Civ. 1510, 2016 WL 315879, at *5 (S.D.N.Y. Jan. 15, 2016) (alteration in original) (quoting *Zeak v. United States*, No. 11 Civ. 4253, 2014 WL 5324319, at *8 (S.D.N.Y. Oct. 20, 2014)). Once the movant has met its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citing *Anderson*, 477 U.S. at 249).

"All evidence submitted on the motion [for summary judgment] is to be construed in the manner most favorable to the nonmoving party." *Okin v. Vill. of Cornwall-On-Hudson Police*

*Dep't*, 577 F.3d 415, 427 (2d Cir. 2009) (quoting *Horvath v. Westport Library Ass'n*, 362 F.3d 147, 151 (2d Cir. 2004)) (internal quotation mark omitted).  However, "[t]o defeat a summary judgment motion, the non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and 'may not rely on conclusory allegations or unsubstantiated speculation.'"  *Great Am. Ins. Co.*, 607 F.3d at 292 (citations omitted) (first quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), then quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).

## III.    Discussion

Under New York law, a prima facie case of negligence requires "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Solomon ex rel. Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (1985).  "To succeed on a premises liability claim alleging any injury caused by a defective condition, the plaintiff must demonstrate 'that the [defendant] either created the defective condition, or had actual or constructive notice thereof for such a period of time that, in the exercise of reasonable care, it should have corrected it.'"  *Tenay v. Culinary Teachers Ass'n of Hyde Park*, 281 F. App'x 11, 13 (2d Cir. 2008) (alteration in original) (quoting *Baez v. Jovin III, LLC*, 839 N.Y.S.2d 201, 202 (App. Div. 2d Dep't 2007)).

Defendants contend that there is no genuine dispute over whether they (1) created, (2) had actual notice of, or (3) had constructive notice of the wet floor that allegedly caused Henry to slip.  (*See* Dkt. No. 36 at 4−5.)  The Court addresses each theory of liability in turn.

### A.    Creation

Henry's theory of the case is that the water in aisle G64 was created by the mobile rack she observed in the adjacent aisle.  In support of this theory, Henry testified that she observed a trail of water running from aisle G64 to the underside of the rack.  (*See* Defs SUF ¶ 11; Dkt. No.

37-2 at 25:14−28:21.) If a jury were to credit Henry's testimony, it could reasonably conclude that water dripping from the boxes on the mobile rack created the hazardous condition that caused Henry's fall.

But under New York law, demonstrating that a defendant "created" a dangerous condition requires showing "some affirmative act" by the defendant. *Fink v. Bd. of Educ. of N.Y.C.*, 498 N.Y.S.2d 440, 441 (App. Div. 2d Dep't 1986); *see also Gonzalez v. Wal-Mart Stores, Inc.*, 299 F. Supp. 2d 188, 192 (S.D.N.Y. 2004). Therefore, the question is whether a jury could reasonably infer from the evidence in the record that either or both Defendants caused the rack to be in aisle G64 as it was dripping water.

There is sufficient evidence to support such a conclusion. Although it is undisputed that Henry did not see an employee of either Defendant in either aisle after her accident (Defs SUF ¶¶ 12−13; Pls SUF ¶¶ 12−13), it is also undisputed that a vendor was unpacking ice cream in aisle G64 at some point before Henry's fall (Defs SUF ¶ 29). And Venita Richardson, a Target employee, testified that the only vendor she saw in that aisle that day was a Haagen Dazs vendor using a "big rack" provided by Target to stock ice cream. (Dkt. No. 37-5 at 39:13−23; 41:2−15; 67:9−15.) Furthermore, the LOD Investigation Report filled out by Target manager Kenton Webley states that the source of the water on which Henry slipped was a "vendor unpacking ice cream[,] [and] condensation built up on floor" (Dkt. No. 45-3), and Richardson's Team Member Witness Statement indicates that the area of the incident "was wet from a vendor packing out" (Dkt. No. 37-9).[3]

---

[3]     Rule 56 provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Defendants argue that the statements in the Team Member Witness Statement are inadmissible hearsay because they are based on statements given to Richardson by Henry. (*See* Dkt. No. 36 at 10.) At this stage, however, the Court cannot conclude that Richardson's written

Defendants point to several cases involving pooled liquids in which courts have, as a matter of law, refused to allow the inference that a hazardous puddle resulted from employee conduct, as opposed to customer actions or a spontaneous spill. *See, e.g.*, *Cooper v. Pathmark Stores, Inc.*, 998 F. Supp. 218, 220−22 (E.D.N.Y. 1998); *Quarles v. Columbia Sussex Corp.*, 997 F. Supp. 327, 330−32 (E.D.N.Y. 1998). But those cases are distinguishable. First, in this case, Henry has offered evidence in the form of written statements indicating that a vendor caused the floor to be wet; she does not ask the fact-finder to rely on speculation alone. Second, Henry identifies a *source* of liquid—the mobile rack—that a customer was unlikely to control or cause to be moved. *See, e.g.*, *Feder v. Target Stores*, 15 F. Supp. 3d 253, 257 (E.D.N.Y. 2014) (concluding in a case in which the plaintiff had slipped on a white plastic strip that "it is unlikely that a customer would carry such an object around a Target store or be involved in the unpackaging and stocking of shelves"); *Olsen v. K Mart Corp.*, No. 04 Civ. 3648, 2005 WL 2989546, at *7 (E.D.N.Y. Nov. 8, 2005) (concluding that "the very location of the box [of Spaghetti-O's over which the plaintiff fell], a slight distance from the shelved Spaghetti-O's, could lead a reasonable jury to infer that the box was overlooked by the stock-associate when he completed his stocking of the pantry-aisle, rather than that a customer hefted the sixteen pound box down the aisle"). And third, a mobile rack is not the sort of implement that could be expected to travel between aisles (not to mention make a ninety degree turn) without some affirmative intervention by a human being. *See, e.g.*, *Ortiz v. Pathmark Stores, Inc.*, No. 03 Civ. 40, 2004 WL 2361674, at *3 (S.D.N.Y. Oct. 20, 2004) (concluding that "the boxes described by

statement is merely a repetition of Henry's statements. And the written statement itself is likely admissible either as an admission by a party-opponent under Federal Rule of Evidence 801(d)(2) or as a business record under Federal Rule of Evidence 803(6). *See Thaqi v. Wal-Mart Stores E., LP*, No. 09 Civ. 755, 2014 WL 1330925, at *6–7 (E.D.N.Y. Mar. 31, 2014). Consequently, the Court will consider the Team Member Witness Statement.

[the plaintiff] are unlikely to have been placed between the refrigerators in the frozen foods section absent an affirmative act by [the defendant store]"), *aff'd*, No. 04 Civ. 6146, 2005 WL 2899864 (2d Cir. Nov. 3, 2005).

From the evidence offered by Henry, a reasonable jury could infer that the vendor in aisle G64 was a Haagen Dazs vendor and that the rack that vendor used was the same rack that contained the leaking boxes. Therefore, the Court concludes that Henry has adduced sufficient evidence to allow a reasonable jury to conclude that the Haagen Dasz vendor created the dangerous condition that caused Henry's accident. Nestle's motion for summary judgment is denied.

For the same reasons, however, the Court concludes that a reasonable jury could not conclude that a Target employee—as opposed to the Haagen Dasz vendor—created the hazardous condition. It would be pure speculation, unsupported by the record, to infer that the Haagen Dazs vendor had control of the mobile rack in aisle G64 shortly before Henry's accident, but that somehow a Target employee took the rack from the vendor and had control of the rack as it began to leak. *See Feder*, 15 F. Supp. 3d at 256 ("[A] plaintiff cannot avoid summary judgment . . . through mere speculation and conjecture . . . ."). And the mere fact that Target loaned the mobile rack to its vendor does not create liability; the defective condition was the water on the floor, not the existence of the rack in the store. Because Henry has made no argument that Target is legally liable for the negligent conduct of a Nestle employee, the Court concludes that no reasonable jury could find that Target created the hazardous condition causing Henry's fall.

### B.    Actual Notice

The Court next considers whether Target had actual notice of the water on the floor.

A "[d]efendant is aware of a dangerous condition if it has either created the condition or has received reports or complaints about the condition, 'such that [it has] actual knowledge of the defect's existence.'" *Buskey v. Boston Mkt. Corp.*, No. 04 Civ. 2193, 2006 WL 2527826, at *6 (E.D.N.Y. Aug. 14, 2006) (alteration in original) (quoting *Quarles*, 997 F. Supp. at 332). Henry admits that she is unaware of any customer complaints made about the condition of the floor before her fall. (Defs SUF ¶ 18; Pls SUF ¶ 18.) And Henry has failed either (1) to identify a Target employee who had knowledge of the floor's condition before her fall, or (2) to offer circumstantial evidence that would allow a reasonable jury to infer that an employee had actual notice. Therefore, Henry fails to raise a genuine dispute over Target's actual notice.

### C.  Constructive Notice

Finally, the Court considers whether Target had constructive notice of the hazard.

"To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Gordon v. Am. Museum of Nat. History*, 67 N.Y.2d 836, 837 (1986). Under New York law, "[t]he mere existence of a foreign substance, without more, is insufficient to support a claim of negligence." *Segretti v. Shorenstein Co., E., L.P.*, 682 N.Y.S.2d 176, 177 (App. Div. 1st Dep't 1998). Instead, a "plaintiff must provide some basis for an inference that the [hazardous condition was] there long enough to blame defendant for the accident," *Lacey v. Target Corp.*, No. 13 Civ. 4098, 2015 WL 2254968, at *4 (E.D.N.Y. May 13, 2015), and "a jury should not be allowed to conclude, based on 'mere speculation,' that a condition was visible and apparent for a sufficient length of time to be discovered and remedied," *Painchault v. Target Corp.*, No. 09 Civ. 1831, 2011 WL 4344150, at *4 (E.D.N.Y. Sept. 14, 2011) (quoting *Bluman v. Freeport Union Free Sch. Dist.*, 772 N.Y.S.2d 527, 528 (App. Div. 2d Dep't 2004)).

Henry's case for constructive notice rests on just two pillars: (1) Henry and others noticed the water *after* Henry's fall, and (2) the LOD Investigation Report described the water as resulting from "condensation," which implies that the water slowly pooled over a long period of time. (Dkt. No. 45 at 23−24.) But under New York law, these facts alone are insufficient to support a jury's finding of constructive notice.

As to Henry's first piece of evidence—*post facto* observation of the water—the Court notes that the legally meaningful time to notice a defective condition is *before* an accident, not after. New York courts (and courts applying New York law) have often "found insufficient evidence to raise a triable issue of fact regarding whether a condition was visible and apparent where a plaintiff did not see the condition prior to a fall, or offer evidence that others saw the condition prior to the fall." *Decker*, 2017 WL 568761, at *7 (collecting cases). Plaintiff admits that she did not see the water before she slipped (Pls SUF ¶¶ 7, 9), and can point to no one else who did.

And as to Henry's second piece of evidence—the "condensing water" under the rack—the Court concludes that Henry's own testimony belies the conclusion she would ask a jury to draw. Henry testified that the line of water was about four to six inches thick and that it ran in "a straight line behind her and then . . . curved into the aisle that ran perpendicular to the aisle that she was in." (Pls. SUF ¶¶ 10−11.) The combination of (1) the small amount of water on the floor and (2) the track it took to the next aisle indicates that the mobile rack leaked as it was moved—not that water slowly pooled as the rack sat stationary. And as the court observed in *Strass v. Costco Wholesale Corp.*, "[o]bviously, a large amount of liquid can be spilled as quickly as a small amount of water. To infer a longer period of time based on the size of the puddle, Plaintiff[] would have to offer evidence that the original puddle was small and grew over

time." No. 14 Civ. 6924, 2016 WL 3448578, at *7 (E.D.N.Y. June 17, 2016). Henry has failed to do so.

Indeed, not only has Henry failed to adduce sufficient proof of Target's negligence, but Target has also affirmatively demonstrated that it did not have constructive notice of the hazard. Undisputed facts demonstrate that, as matter of law, Target employees reasonably monitored the aisle's condition. First, Henry does not dispute Defendants' evidence that there are at least twenty Target employees roving the store at any given time and that these employees inspect the aisles every five to fifteen minutes. (Defs SUF ¶¶ 19−20, Pls SUF ¶¶ 19−20.) And "[w]here a defendant conducts regular inspections and fails to discover any hazards prior to a plaintiff's slip and fall, there can be no showing of constructive knowledge." *Strass*, 2016 WL 3448578, at *5; *see also Gonzalez v. K-Mart Corp.*, 585 F. Supp. 2d 501, 505 (S.D.N.Y. 2008) (holding that as a matter of law, a store "did not act unreasonably in failing to remedy [a] dangerous condition" when it conducted inspections every ten to fifteen minutes). Second, Henry does not genuinely dispute that a Target employee inspected aisle G64 sometime after 10 a.m. (*see* Defs. SUF ¶¶ 22−23; Pls SUF ¶ 22−23), within an hour before Henry's fall (*see* Defs SUF ¶¶ 22−23; Pls SUF ¶ 32). An inspection within the hour of an accident is generally sufficient under New York law to show lack of constructive notice. *See, e.g.*, *Shimunov v. Home Depot U.S.A, Inc.*, No. 11 Civ. 5136, 2014 WL 1311561, at *6 (E.D.N.Y. Mar. 28, 2014) (granting summary judgment in favor of defendant where the plaintiff had not noticed the defective condition and the store manager had not seen the hazard "during any of her inspections, including an inspection she conducted, at most, an hour before plaintiff's accident"); *Mantzoutsos v. 150 St. Produce Corp.*, 907 N.Y.S.2d 34, 35 (App. Div. 2d Dep't 2010) (granting summary judgment for the defendant where it had, among other things, offered evidence that "sometime within the hour immediately

before the injured plaintiff fell," the manger "had inspected the . . . aisle and did not observe any . . . any dangerous condition on the floor").

Therefore, even viewing the evidence in the light most favorable to the non-movant, the Court concludes that a reasonable jury could not find that Target had constructive notice of the water that caused Henry's fall. The Court grants Target's motion for summary judgment.

**IV.     Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in part and DENIED in part. Summary judgment is granted as to Target but denied as to Nestle.

The Clerk of Court is directed to close the motion at Docket Number 35.

Within two weeks of date of this order, the parties shall submit a joint status letter outlining their proposals for the next phase of this case, including proposed trial dates in the next six months.

SO ORDERED.

Dated: July 24, 2018
        New York, New York

_____
                    J. PAUL OETKEN
                United States District Judge